FILED
2007 Dec-13  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHERYL D. MALONE,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **2:06-cv-1541-JHH** |
| **JEFFERSON COUNTY PERSONNEL BOARD,** | ) | |
| | ) | |
| **DEFENDANT.** | | |

## MEMORANDUM OF DECISION

The court has before it the September 27, 2007 motion (doc. # 14) of defendant Jefferson County Personnel Board for summary judgment.  Pursuant to the court's September 28, 2007 order, the motion was deemed submitted, without oral argument, on October 26, 2007.

### I. Procedural History

Plaintiff Cheryl D. Malone commenced this action on August 7, 2006 by filing a complaint in this court alleging discrimination and retaliation on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.  Defendant's motion for summary judgment asserts that no genuine issues of material fact exists and defendant is

entitled to judgment as a matter of law.

Both parties have filed briefs and submitted evidence in support of their respective positions.  Defendant submitted a brief (doc. # 15) and evidence[1] (doc. # 16) in support of its own motion for summary judgment on September 27, 2007.  On October 19, 2007, plaintiff filed a brief (doc. # 18) and evidence[2] (doc. # 19) in opposition to defendant's motion for summary judgment.  On October 26, 2007, defendant filed a brief (doc. # 20) in reply to plaintiff's opposition.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[1] The defendant submitted the following evidence: deposition of Cheryl Malone; Judge Smith's 7/8/2002 order; 4/11/2005 notice to employee of contemplated disciplinary action; 4/13/2005 notice of appeal of disciplinary action; Dr. Sim's 5/10/2005 response to notice of appeal; Magistrate Judge Harwell Davis's 7/26/2006 report and recommendation as to appeal of disciplinary action; Judge Smith's 8/15/2006 order adopting report and recommendation; 3/8/2005 grievance filed by Malone; 3/24/2005 grievance filed by Malone; Magistrate Judge Davis's 3/13/2006 report and recommendation as to grievances; Judge Smith's 4/11/2006 order adopting report and recommendation; affidavit of Roger McCullough; transcript of appeal hearing dated 4/18/2006 and 4/19/2006; Judge Proctor's memorandum opinion in Sandra Henry v. Jefferson County Personnel Board, 2:05-cv-1788-RDP.

[2] The plaintiff submitted the following evidence: Malone's grievance filed 2/14/2005 against Fancher with attachments; Malone's grievance filed 2/28/2005 against McCullough with attachments; United States v. Jefferson County, et al., CV-75-S-666-S, with exhibit.

2

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  After the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the

issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Prop., 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a

simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

*A.  The Receivership*

On July 8, 2002, after finding the Jefferson County Personnel Board in civil contempt for failing to comply with various court orders, Judge Lynwood Smith of the United States District Court for the Northern District of Alabama entered an

---

[3] If the facts are in dispute, they are stated in a manner most favorable to the non-movant. See Fitzpatrick, 2 F.3d at 1115.  When applicable, the court has noted what facts are in dispute.

order appointing Ronald R. Sims, Ph.D. as Receiver of the Board.  See United

States v. Jefferson County, 2:75-cv-666-CLS. Doc. #935 (N.D. Ala. July 8, 2002).

He was directed, *inter alia*, to perform the following specific duties:

> (I) assess the present organizational structure of the
> Personnel Board, and design appropriate
> infrastructure, systems, and procedures that will
> institutionalize the ability o perform all functions —
> particularly the functions of developing and
> administering lawful selection procedures for hiring
> and promotion in the classified services of the
> county, municipalities, and appointing authorities
> served by the Board — in an efficient, professional,
> and cost-effective manner[; and]
> . . .
> (k) perform all other acts necessary to transform the
> Personnel Board into a strong and competent civil
> service agency with a clearly defined mission, the
> infrastructure, systems, and skills to support that
> mission, and, an agency that discharges all functions
> in an efficient, professional, and cost-effective
> manner in substantial compliance with all applicable
> federal and state laws and regulations.

Id. at  ¶¶ 3(I), (k).  To accomplish these and other ends, Sims received "all powers

vested by Act No. 248 (Enabling Act) in the three members of the Personnel

Board and Personnel Director, including the power to hire, promote, demote,

transfer, and remove subordinates as necessary."  Id. at 2, 11-12.  During his

tenure as Receiver, Sims transferred employees, hired new employees, hired

consultants, hired a Deputy Director, and terminated employees.  (Malone Dep. at

6

22-23, 25-27, 142.)  The order also bestowed upon Sims "the status of an officer and agent of this Court," and "such immunities as by law vested with this Court." United States v. Jefferson County, 2:75-cv-666-CLS. Doc. #935 (N.D. Ala. July 8, 2002).

## B.  Employment History

Cheryl Malone, a forty-five year old woman, began her employment with the Board in August 1991.  (Def.'s Ex. M at 199.)  Her first position was as an Administrative Assistant.  (Id.)  She was promoted to the position of Personnel Technician in the Testing Department.  (Id.; Malone Dep. at 59-60.)  In July 2002, after Sims was appointed Receiver, Sims re-titled Malone's position as Examination and Certification Assistant.  (Id. at 60.)  At the end of 2002, Malone was transferred to the position of Test and Measurement Technician, a position she held until October 2003.  (Id. at 61-62.)

On October 30, 2003, Malone applied for and was awarded the position of Data Management Specialist in the IT department.  (Id. at 62-64.)  There were two other Data Management Specialists in the department, Ayla Russell and Vincent Curtis,[4] although they began their jobs at some time after Malone.  (Id. at 175-79;

---

[4] There is no evidence in the record regarding the ages of Russell and Curtis.  Although Malone testified that they were "younger employees," (Malone Dep. at 74-75, 84), the court can find no evidence as to their actual ages in the record, and neither of the parties informed the court

Def.'s Ex. M at 285.)  During the relevant time period, Kimberli Fancher was

Malone's direct supervisor.  (Id. at 71-73.)

### C.  Grievances

Malone testified that in the fall or winter of 2004, she overheard a

discussion between Roosevelt Butler, the network administrator, Roger

McCullough, the Human Resources Manager, and Fancher.[5]  (Id. at 120.)  Malone

stated that McCullough, who was leading the conversation, told the other that

there was a "plan to eliminate the old employees" and that plan "includes Cheryl

Malone."  (Id. at 120, 134.)  Malone interpreted the word "old" to mean the

employees who were older in age, as opposed to the employees who had been

there for a longer period of time.[6]  (Id. at 121.)

On February 11, 2005, Malone sent and e-mail to McCullough requesting a

meeting with him to discuss her belief that she was being denied access[7] to certain

---

of their ages in the briefs submitted to the court.  In fact, the two places in plaintiff's brief where she alleges that Curtis and Russell were younger than her, (see Pl.'s Br. at 8, 19), the citations given do not contain any information regarding their ages.

[5] Fancher was not Malone's supervisor at the time she overheard this conversation. (Malone Dep. at 136.)  Jeffrey Crenshaw was her supervisor at this time.  (Id.)

[6] Later in her deposition, when questioned about the use of the term "old" in the same context, Malone stated that "[t]he older employees were also the one who were older in age. They had been there for a period of time."  (Id. at 138-39.)

[7] Malone learned of this because Fancher forwarded Malone an e-mail from Butler which stated that he "really d[id]n't want to give Cheryl the admin password to Sigma" which was

8

applications.[8]  (Def.'s Ex. H.)  Malone complained in the e-mail that she believed

that she was being ostracized and prevented from fulfilling the full scope of her

duties, unlike other members of her team, who were given access to those

applications.  (Id.)  She also relayed instances where she believed she was being

treated differently than other members of the IT department.  (Id.)  Malone copied

Sims, Lorren Oliver, Deputy Personnel Director, Butler, and Fancher on the e-

mail. (Id.)

Less than an hour later, Fancher replied to Malone's e-mail with specific

responses to Malone's accusations.[9]  (Id.)  Seconds after Malone received

Fancher's response, Fancher "abruptly burst into [Malone's] office in what

appeared to be [an] enraged emotional state."  (Id.)  According to Malone, Fancher

slammed the door closed and open twice "with such intense force that particles

from the ceiling tile dislodged and fell to the floor and onto a nearby chair."  (Id.)

After the second slam, Fancher left the door open and began yelling at Malone "in

a loud and demeaning manner," while "shaking and wagging her finger at"

---

required to complete a certain project.  (Def.'s Ex. H.)

   [8] Less than 10 minutes after Malone sent her e-mail to McCullough, Butler responded to
the message, stating that "[i]t is not just Cheryl I don't want to give admin privileges to its's
everybody.  The email should have been worded correctly."  (Def.'s Ex. H.)

   [9] Fancher's response was sent to the same individuals who received Malone's original e-
mail.  (Def.'s Ex. H.)

Malone.  (Id.) Malone alleges that Fancher yelled that Malone should "not ever go over [Fancher's] head again and send a message to Roger [McCullough], Dr. Sims and Lorren [Oliver]."  (Id.)  Among other statements, Malone alleges that Fancher screamed, "Vincent [Curtis] and Ayla [Russell] are strong!  You are weak!"  (Id.)  Malone also stated in her deposition that during the alleged incident, Fancher referred to Malone as "old."  (Malone Dep. at 168.)

Immediately after Fancher left her office, McCullough knocked on Malone's door.  (Def.'s Ex. H.)  McCullough wanted to discuss the e-mail Malone had sent him.  (Id.)  McCullough asked what the "disturbance with [Fancher was] about," and stated that "[i]t's not good to have your supervisor *that* angry with you."  (Id.) (emphasis in original).  McCullough and Malone then discussed the things Malone had reported to McCullough in her e-mail.  (Id.)  McCullough told Malone that she "had a problem going outside the team structure."  (Id.)  Malone explained that she did not intend to cause any ill will.  (Id.)

After this meeting, Malone attempted to talk with Fancher about the incident.  (Id.)  According to Malone, Fancher "was not in a very agreeable mood."  (Id.)  Fancher told Malone that she had "not changed [her] mind, and [she] [would] not take back any of the things that [she] said earlier!"  (Id.)  Fancher further stated that she would "never work with [Malone] again!"  (Id.)

10

On February 14, 2005, Malone filed a formal grievance about the incident between Fancher and herself.  (Id. at 20, 42-43; Def.'s Ex. H.)  Malone complained that she was given inadequate training to perform her job satisfactorily.  (Def.'s Ex. H.)  She also complained about the loud outbursts directed at her by Fancher.  (Id.)  Malone did not include any allegations that Fancher referred to Malone as "old."  (Id.)  The grievance concludes that "because of Ms. Fancher's remarks and her violent treatment towards me earlier, I feel that my job has been threatened.  Ms. Fancher's conduct was totally and completely unbecoming that of a supervisor or manager.  I have never before experienced such violent behavior where I was personally treated in such a derogatory and demeaning manner and I hope to never experience it again."  (Id.)

Sometime after filing this grievance, Malone alleges that during a conversation with McCullough, McCullough also referred to Malone as "old" and told her that it was "time to move on."  (Malone Dep. at 106, 111, 115.)  Malone never reported these statements.  (Id. at 135, 163-65.)

Then, on February 28, 2005, Malone filed a second grievance.  (Pl.'s Ex. B; Def.'s Ex. I.)  This grievance alleged, among other things, that On February 24, 2005, an agitated McCullough entered Malone's office and informed her that he did not appreciate Malone going outside the team structure by sending him, and

11

other members of management, e-mails.  (Id.)  Malone explained to McCullough

that Fancher had actually sent him the e-mail McCullough referenced.  (Id.)

Malone also informed McCullough that after Malone filed her grievance, Fancher

had give her six new work assignments that changed her job duties by requiring

manual calculations and intricate knowledge of codes that Malone had never

worked with before.  (Id.)  Malone asked for equal access to the computer system

and further opportunities to learn about the relevant codes.  (Id.)

This grievance also involved a performance appraisal from McCullough and

complaints about recent work assignments.  (Id.)  More specifically, Malone

complained about a performance appraisal regarding her assignment to the Help

Desk by McCullough.  (Id.)  She asserted that she was not given adequate

coaching or training for the position.  (Id.)  Malone also complained about a

change in the job description of the Data Management Specialist position, which

she believed favored newly hired Data Management Specialists and disadvantaged

her.  (Id.)  Malone stated that she believed that she was being given punitive work

assignments to set her up for failure.  (Id.)  Malone did not report, however, any

allegations that McCullough or Fancher made any age-related comments to or

about Malone.  (Id.)

### D.  Termination

Malone was presented a Notice to Employee of Contemplated Disciplinary Action from Sims on April 11, 2005.  (Malone Dep. at 49; Def.'s Ex. C.)   The Notice of Contemplated Disciplinary Action stated that Malone failed to demonstrate a clear understanding of basic data relationships, data validation techniques or data management principles.  (Id.)   It further stated that she failed to consistently deliver complete, accurate, meaningful and user friendly reports, failed to complete tasks from concept to execution with minimal instructions, and failed to transfer knowledge gained from one assignment to the next similar assignment.  (Id.)  Finally, the notice informed Malone that her employment with the Board was terminated as of April 24, 2005.[10]  (Id.)

Malone was forty-three years old when she was terminated.  (McCullough Aff. ¶ 3.)  The individual hired to replace Malone was Donna Cockrell.  (Id. ¶ 4.) Donna Cockrell was also forty-three years old at the time she was hired by the Board.  (Id.)

## IV. Applicable Substantive Law

_____

[10] Malone appealed this disciplinary action in federal court.  (Malone Dep. at 44-45; Def.'s Ex. D.)  A two-day hearing was held on the appeal before Magistrate Judge Davis. (Malone Dep. at 51.)  Judge Davis issued a report and recommendation, sustaining the decision to terminate Malone, finding that Malone was "unable to perform the essential functions of her job with or without reasonable accommodation and the discharge of Malone was the only appropriate (or available) course of action considering al of the circumstances."  (Def.'s Ex. F at 20.)  Malone did not object to the report and recommendation, and Judge Lynwood Smith accepted and adopted the recommendations of Judge Smith.  (Malone Dep. at 55; Def.'s Ex. G.)

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Cmty. College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that

14

definition); see also Bass v. Board of County Comm'rs, Orange County, Florida, 242 F.3d 996, 1010 (11th Cir. 2001) (discussing meaning of "direct evidence" in the context of a Title VII race discrimination claim; "direct evidence" refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination.").

Here, it is undisputed that plaintiff presents only circumstantial evidence of discrimination and retaliation. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. See id. at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Bd. of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general, a

plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[11]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[12]  See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination

---

[11]  See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

[12]  See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

16

falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[13]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25.

Where plaintiff seeks to prove pretext by showing she was more qualified than the person given the job or promotion, she must show that the disparities between the successful applicant's and her own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004), cert. denied 126 S. Ct. 478 (2005) (citation omitted); see also Brooks v. County Comm'n of Jefferson County, Ala., 466 F.3d 1160, 1163 (11th Cir. 2006); Ash v. Tyson Food, Inc., 126 S. Ct. 1195, 1197 (2005) (approving of language in Cooper).  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima

---

[13] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

facie case.  See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50

18

motion);[14] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly,

210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d

1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and

the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-

21 (11th Cir. 1993).

## V. Discussion

Plaintiff's complaint contains the following claims: (1) discrimination in her

termination on the basis of age; and (2) retaliation for engaging in statutorily

protected activity.  Defendant's motion for summary judgment asserts that

plaintiff's complaint fails for three alternative reasons.  First, defendant contends

that it cannot be held liable for Sims's decisions as Receiver because it had no

power to act and Judge Smith's July 8, 2002 order gave Sims judicial immunity.

Second, defendant maintains that Malone's claims are barred by the defense of

collateral estoppel.[15]   Finally, defendant argues that the decisions at issue had

nothing to do with age.  For the following, alternative reasons, summary judgment

---

[14] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

[15] Because summary judgment is due to be granted on both the first and the last ground argued by defendant, the court does not decide whether Malone's claims are barred by the doctrine of collateral estoppel.

is due to be granted.

### A.  Liability of the Board

The Board argues that summary judgment is proper because it "is immune from liability for any employment decisions made during the period in which the Personnel Board was under the Receivership."  (Def.'s Br. at 19.)  In support of this argument, the Board cites the opinion of federal district Judge R. David Proctor in Sandra Henry v. Jefferson County Personnel Board, __ F. Supp. 2d ___, 2007 WL 3227679 (N.D.Ala. 2007).  In Henry, Judge Proctor granted summary judgment for the Board on the basis of this argument[16] for two reasons: (1) because "Sims was the sole party responsible for making employment decisions during the relevant time period, while the Board was stripped of the ability to have any input into (or role in making) those decisions.  Thus . . . the Board is not-and cannot be-liable for the actions of Sims about which Plaintiff complains."  id. at *6; and (2) because "Judge Smith's Order bestows upon Sims judicial immunity for employment decisions rendered . . . . under Alabama law, the Board is also due the protection of 'vicarious immunity' as an extension of the immunity bestowed on Sims . . . ."  Id. at *7.   Recently, this opinion was affirmed in an unpublished

---

[16] Alternatively, Judge Proctor held that plaintiff's claims failed on the merits.  Henry, ___ F. Supp.2d at ___, 2007 WL 3227679, at *9-17.

opinion by the Eleventh Circuit "for the reasons stated in the district court's

thorough and well-reasoned Memorandum Opinion of February 23, 2007."

Sandra Henry v. Jefferson County Personnel Board, 2007 WL 3118325, at * 1

(11th Cir. Oct. 25, 2007) (unpublished).

        The instant case is indistinguishable from Henry.   Pursuant to Judge

Smith's July 8, 2002 order, Sims was vested with the following authority:

>         [A]ll authority necessary to ensure that the Board fully,
> faithfully, and lawfully complies in a timely, efficient and cost
> effective manner and with all functions and obligations required of
> the Board in terms of the Board's 1981 Consent Decree . . .
> [including] full power to direct, control, operate, manage, and
> administer the property, funds, and employees of the Board [and] all
> powers vested by the Act No. 248 in the three members of the Board
> and Personnel Director including the power to hire, promote, demote,
> transfer and remove subordinates as necessary . . . .

United States v. Jefferson County, 2:75-cv-666-CLS, Doc. #935 at 2, 4-6 (N.D.

Ala. July 8, 2002).  With such order, the Board itself was divested of all the above-

mentioned powers concerning Board employees, as the order specifically states

that "the members of the Jefferson County Personnel Board shall not perform for

forgoing functions" with regard to Board employees as those duties were

transferred to Sims alone.  Id. at 11.

        As in Henry, the record is undisputed that, in accordance with Judge

Smith's order, Sims was the sole decisionmaker regarding the decision to

terminate Malone.  (Appeal Hearing at 17.)  Therefore, just as Judge Proctor concluded in <u>Henry</u>, the court must conclude that "because the Board was prohibited from any participation in the decisions at issue in this case, and because Sims was the only decisionmaker with regard to those decisions, it follows as a matter of law, fact and logic that the Board cannot be liable for actions that it did not and could not take."  <u>Henry</u>, ___ F. Supp. 2d at ___, 2007 WL 3227679, at *7.

Alternatively, just as in <u>Henry</u>, the Board enjoys "vicarious immunity" for Sims's actions because Sims himself was granted judicial immunity from liability for the actions at issue in this case.  <u>Id.</u>  Alabama courts have extended discretionary function immunity to insulate municipalities and employers from vicarious liability for their agent's actions when the agent is due immunity.  <u>See</u> <u>Roden v. Wright</u>, 646 So.2d 605, 611 (Ala. 1994); <u>Gore v. City of Hoover</u>, 559 So.2d 163, 165-66 (Ala. 1990).  Because Judge Smith's order vests Sims with "the status of an officer and agent of this Court," and "such immunities as by law vested with this Court," Sims was given judicial immunity for employment decisions rendered during his tenure as Receiver.  Accordingly, the Board is due "vicarious immunity" as an extension of Sims's immunity under Alabama law.

In conclusion, just as in <u>Henry</u>, the Board is not liable for Malone's claims in this case and, defendant's motion for summary judgment is due to be granted.

<u>See</u> <u>Sandra Henry v. Jefferson County Personnel Board</u>, ___ F. Supp. 2d at ___,
2007 WL 3227679, at *9 (N.D.Ala. 2007), <u>aff'd</u> 2007 WL 3118325, at * 1 (11th
Cir. Oct. 25, 2007) (unpublished).  The court is aware, however, that although
unpublished opinions of the Eleventh Circuit are persuasive authority, they are not
binding precedent.  Because the facts of this case are indistinguishable from the
facts in <u>Henry</u>, this court has no reason to believe that the Eleventh Circuit would
revisit its conclusions when it affirmed Judge Proctor in <u>Henry</u>.  However, because
the unpublished Eleventh Circuit opinion was not specific as to exactly which
ground upon which it affirmed, and instead cited to all three grounds decided by
Judge Proctor, the court addresses the merits of Malone's complaint below.

*B. Substantive Analysis*

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail
or refuse to hire or to discharge any individual or otherwise discriminate against
any individual with respect to his [or her] compensation, terms, conditions, or
privileges of employment, because of such individual's age."  29 U.S.C.
§ 623(a)(1).  To fall under the protections of the ADEA, an employee must be "at
least 40 years of age." 29 U.S.C. § 631(a).  As outlined in detail above, the
Eleventh Circuit uses the framework established in <u>McDonnell Douglas</u> and
<u>Burdine</u> to evaluate ADEA claims that are based upon circumstantial evidence of

discrimination.  Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003).  The plaintiff always bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate her employment. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

### 1. Discrimination

#### a. Prima Facie Case

Under the well-established framework, the plaintiff must first establish a prima facie case of discrimination.  See Combs, 106 F.3d at 1527-28 (citations omitted).  One method a plaintiff can use to establish a prima facie case for an ADEA violation is by showing that she (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

The first two elements of her prima facie case are undisputed: she is a member of the protected class at the age of 43, and she was subjected to an adverse employment action, termination.  The Board argues that Malone fails to meet the last two elements of her prima facie case.  It maintains that Judge Davis found that she was not qualified for her position because she was "unable to perform the essential functions of her job" and that she was not replaced by a

24

younger individual.

Malone's prima facie case fails because she has not produced any evidence from which a reasonable juror could conclude that she was replaced by a younger individual.  The only evidence in the record regarding this element of her prima facie case is that she was replaced by Donna Cockrell who was also forty-three years old at the time she was hired by the Board.  (McCullough Aff. ¶ 3.)  Although Malone argues that before she was terminated the Board was attempting to replace her with Curtis and Russell,[17] there is no evidence in the record of such behavior, other than Malone's self-serving argument.  Such an argument, without admissible evidence to support it, is insufficient to establish that Malone was replaced by anyone other than Cockrell.  Therefore, Malone failed to establish a prima facie case of discrimination and the Board is entitled to summary judgment on this claim.

b.  Legitimate, Nondiscriminatory Reason and Pretext

Even if Malone established a prima facie case of discrimination, the Board articulated legitimate, nondiscriminatory reasons for her termination, and Malone has failed to present sufficient evidence of pretext.  The Board terminated Malone

---

[17] Moreover, there is nothing in the record regarding the ages of Curtis and Russell, other than Malone's testimony that they were "younger."  See supra footnote 4.

25

for "incompetence or inefficiency" for her "[i]nability to perform the essential

functions of her job with out without reasonable accommodation."  (Def.'s Ex. C.)

Sims made the decision based on Malone's performance problems.  (Def.'s Ex. M.

at 17, 30.)

Malone has failed to establish that the legitimate, nondiscriminatory reasons

for her termination were a pretext for age discrimination.  Malone's arguments

regarding pretext boil down to explanations and excuses for her poor performance

in the last months of her employment.  Such arguments do not come close to

establishing pretext in the Eleventh Circuit.  "A plaintiff must show not merely

that the defendant's employment decisions were mistaken but that they were in

fact motivated by" age.  Lee, 226 F.3d at 1253.  The role of the court "is to prevent

unlawful hiring practices, not to act as a super personnel department that

second-guesses employers' business judgments."  Id. at 1254.  The court's "sole

concern is whether unlawful discriminatory animus motivates a challenged

employment decision."  Damon, 196 F.3d at 1361. Whether the poor performance

was Malone's fault is not an issue for the court to consider.  Instead, the court

concludes that Malone has wholly failed to produce any evidence from which a

reasonable juror could conclude that she was terminated because of her age, and

the Board is entitled to summary judgment on her claim of age discrimination.

2.  Retaliation

a.  Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must prove the following elements: (1) she engaged in an activity protected by ADEA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision.  See Farley v. Nationwide Mut. Ins., 197 F.3d 1322, 1336 (11th Cir. 1999).  Defendant contends that plaintiff cannot establish that she engaged in activity protected by the ADEA, or that there is a causal connection between her alleged protected activity and the adverse employment decision.  (Def. Br. at 31-32.)

Malone's prima facie case of retaliation fails because she did not engage in statutorily protected activity.  The retaliation provision of the ADEA protects only certain kinds of activity.  It prohibits retaliation for an employee's opposition to an employment practice made unlawful by the ADEA or an employee's participation in an investigation, proceeding or litigation under the ADEA.  29 U.S.C. § 623(d). The grievances filed by Malone and her participation in the proceedings surrounding those grievances do not amount to activity protected by the ADEA. The simple reason for this conclusion is because none of her grievances, nor the

27

proceedings surrounding those grievances, contain any mention of Malone's allegations of age discrimination.  Instead, the grievances contain only complaints by Malone about her working environment.  (See Def.'s Ex. H & I.)  It is undisputed that Malone never reported any incidents, conversations, or statements made about her age.[18]  As such, Malone did not engage in protected activity under the ADEA.  See 29 U.S.C. § 623(d).

In anticipation of this conclusion, Malone argues in her brief that she can establish a prima facie case by showing that she reasonably believed that she was opposing a violation of ADEA by her employer.  (Pl. Opp. Br. at 22-23.)  The Eleventh Circuit has "recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  Little v. United Techs., Carrier Transicold Div.,  103 F.3d 956, 960 (11th Cir. 1997) (citing Rollins v. State of Fla. Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989)).   In Little, the Eleventh Circuit highlighted the plaintiff's burden under this standard as both subjective and objective:

---

[18] The only comment reported by Malone that comes remotely close to an allegation regarding her age, is the statement made by Fancher that "Vincent and Ayla are strong!  You're weak!"  However, when reading this statement in context of the grievance, in the light most favorable to the plaintiff, no reasonable juror could conclude that the reporting of this statement to McCullough was an allegation of age discrimination.

> A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Id.

The problem for Malone, however, is the same problem faced by the plaintiff in Little. Malone's self-serving assertion that she believed she was being discriminated against because of her age when she complained in February 2005 is implausible, at best. See id. Malone never communicated this "fear[] [that] she was being discriminated against on the basis of age" (Pl.'s Opp. Br. at 22) to anyone until the filing of the lawsuit. Instead, she communicated, in great length and with great specificity, many other complaints about her working environment to members of management. No rational juror could find Malone's "good faith and reasonable belief that denying her access to database functions was a discriminatory act" (id.) to be objectively reasonable. See Little, 103 F.3d at 960.

Therefore, Malone failed to establish the first element of her prima facie case, that she engaged in statutorily protected activity. Defendant's motion for summary judgment as it relates to plaintiff's claim of retaliation in violation of ADEA is due to be granted. Out of an abundance of caution, the court continues

its analysis in the alternative.[19]

### b.  Legitimate, Nonretaliatory Reason and Pretext

Even assuming that Malone established a prima facie case of retaliation,

as explained in Section V.B.1.b., the Board articulated legitimate, nonretaliatory

reasons for her termination and Malone has failed to present sufficient evidence of

pretext.  Malone articulates the same pretext arguments presented to the court

regarding her discrimination claim.  Her arguments amount to explanations and

excuses for her poor performance in the last months of her employment.  Such

argument fail for the same reasons stated above.  As such, Malone has failed to

produce any evidence from which a reasonable juror could conclude that the

Board retaliated against her with regard to increased work assignments and/or her

termination.  The Board is entitled to summary judgment on her claim of

retaliation in violation of the ADEA.

---

[19] Malone established the other two elements of her prima facie case.  She suffered an adverse employment action when she was terminated.  Malone also suffered an adverse employment action when Fancher gave Malone six new work assignments in one day, when she was generally given two or three assignments in one month.  See Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2409 (2006).  Assuming, *arguendo*, that Malone engaged in statutorily protected activity when she complained on February 14, 2005 and February 28, 2005, less than two weeks passed between her first complaint and the new work assignments.  This "close temporal proximity" is sufficient to establish a causal connection at the prima facie stage.  See Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).  A little less than two months passed between Malone's grievances and her termination.  The court assumes, without deciding, that this period of time is sufficient to establish a causal connection at the prima facie stage.

## VI.  Conclusion

In summary, the court finds that no material issues of fact remain and that defendant the Personnel Board of Jefferson County is entitled to judgment as a matter of law as to all claims asserted by plaintiff.

A separate order will be entered.

**DONE** this the ___13th___ day of December, 2007.


_____

SENIOR UNITED STATES DISTRICT JUDGE